Dockets.Justia.com

# EXHIBIT "C"

# POST-TERMINATION AGREEMENT
# AND COVENANT NOT TO COMPETE

This Post-Termination Agreement and Covenant Not to Compete is entered into this ---(10th) day of January, 2006, by and between Wal-Mart Stores, Inc. and its affiliates ("Wal-Mart") and Julie Roehm ("You

1. ACKNOWLEDGMENTS. As part of this Agreement, the parties specifically acknowledge that

(A) Wal-Mart is a major retail operation, with stores located throughout the United States and in certain foreign locations;

(B) You are being hired to serve as Senior Vice President, Marketing Communications a key executive position as defined by the Wal-Mart Board of Directors;

(C) As an essential part of its business, Wal-Mart has cultivated long term customer and vendor relationships and goodwill, which are difficult to develop and maintain, which require a significant investment of time, effort, and expense, and which can suffer significantly upon the departure of key executives;

(D) In the development of its business, Wal-Mart has also expended a significant amount of time, money, and effort in developing and maintaining confidential, proprietary, and trade secret information which, if disclosed or misused, could harm Wal-Mart's business and its competitive position in the retail marketplace;

(E) As Senior Vice President, Marketing Communications, you have access to confidential and proprietary trade secret information and other confidential information, including business plans and strategies, that would be of considerable value to Wal-Mart's competitors; and

(F) You acknowledge that Wal-Mart is entitled to take appropriate steps to ensure (i) that its Associates do not make use of confidential information gained during the course of their employment

with Wal-Mart and (ii) that no individual associate or competing entity gains an unfair, competitive advantage over Wal-Mart.

2. **TRANSITION PAYMENTS.** If Wal-Mart initiates the termination of your employment, Wal-Mart will, for a period of one (1) year from the effective date of such termination ("the Transition Period"), continue to pay your base salary at the rate in effect on the date of termination ("Transition Payments"), subject to such withholding as may be required by law and subject to the following conditions and offsets:

(A) Transition Payments will not be paid, if you are terminated as the result of a violation of Wal-Mart policy;

(B) If you are demoted or reassigned,(in a manner that does not constitute a constructive discharge) so that you cease to be a key executive as defined or determined by the Board of Directors, you will no longer be bound by the Covenant Not to Compete set forth in Paragraph 3, below, and will cease to be eligible for any of the benefits or payments (e.g., Transition Payments) provided by this Agreement;

(C) No Transition Payments will be paid if you voluntarily resign or retire from your employment with Wal-Mart;

(D) Given the availability of other programs designed to provide financial protection in such circumstances, Transition Payments will not be paid under this Agreement if you die or become disabled. If you die during the Transition Period, Transition Payments will cease at that time, and your heirs will not be entitled to the continuation of such payments. Transition Payments will not be affected by your disability during the Transition Period.

(E) Transition Payments will be offset by any amounts that you may earn during the Transition Period by virtue of self-employment or employment with, or involvement in, an entity other than a Competing Business, as defined in Paragraph 3(B) below. No Transition Payments will be made if you

2

are employed by a Competing Business as defined in Paragraph 3. Violation of your obligations under Paragraph 3 or Paragraph 4 below, or any other act that is materially harmful to Wal-Mart's business interests during the Transition Period, will result in the immediate termination of Transition Payments, in addition to any other remedies that may be available to Wal-Mart;

(F) Transition Payments will be paid on such regularly scheduled paydays as may be adopted by Wal-Mart for its other salaried employees.

(G) Receipt of Transition Payments will not entitle you to participate during the Transition Period in any of the other incentive, stock option, profit sharing, or other associate benefit plans or programs maintained by Wal-Mart, except, you will be entitled to participate in such plans or programs, to the extent that the terms of the plan or program provide for participation by former associates. Such participation, if any, shall be governed by the terms of the applicable plan or program.

3. **COVENANT NOT TO COMPETE.** In exchange for your promotion, for your inclusion in the Transition Payment program set forth in Paragraph 2, and for other good and valuable consideration, you agree, promise, and covenant as follows:

(A) For a period of one (1) years from the date on which your employment with Wal-Mart terminates, and regardless of the cause or reason for such termination, you will not directly or indirectly

(i) own, manage, operate, finance, join, control, advise, consult, render services to, have a current or future interest in, or participate in the ownership, management, operation, financing, or control of, or be employed by or connected in any manner with, any Competing Business as defined below in Paragraph 3(B); or

(ii) solicit for employment, hire or offer employment to, or otherwise aid or assist any person or entity other than Wal-Mart in soliciting for employment, hiring, or offering employment to, any employee of Wal-Mart, or any of its affiliates;

3

(B) For purposes of this Agreement, the term "Competing Business" shall include any general or specialty retail, wholesale, or merchandising business that sells goods or merchandise of the types sold by Wal-Mart at retail to consumers that is (i) located within the United States, or any other country in which Wal-Mart or its affiliates either operate a store or are known by you to have plans to open or acquire an operation within the next twenty-four (24) months, and that (ii) has gross annual sales volume or revenues attributable to its retail operations in excess of U.S. $2 billion, or is reasonably expected to have gross sales volume or revenues of more than U.S. $2 billion in either the current fiscal year or the next following fiscal year. "Competing Business" as of the date of this Agreement shall specifically include, but is not limited to, such entities as Target/Dayton Hudson, Costco, K-Mart, Home Depot, Dollar General, Family Dollar, Kohls, Hudson Bay Company, Carrefour, HEB, Fred Meyers, Tesco, Makro, Ahold, J.C. Penney Co., Sears, Aldi, Lidl, J. Sainsbury, Morrison's, Ito-Yokado, Aeon-Jusco, Auchon, Toy's R Us, Loblaw Cos., Zeller's, Casino, Woolworth (Australia), Grupo Gigante, Controladora Comercial Mexicana, Soriana, Dollar Tree Stores, Inc. and Safeway Inc. and Plc.

(C) Ownership of an investment of less than the greater of $25,000 or 1% of any class of equity or debt security of a Competing Business will not be deemed ownership or participation in ownership of a Competing Business for purposes of this Agreement.

(D) The covenant not to compete contained in this Paragraph 3 shall bind you, and shall remain in full force and effect, regardless of whether you qualify, or continue to remain eligible, for the Transition Payments described in Paragraph 2 above. Termination of the Transition Payments pursuant to Paragraph 2 will not release you from your obligations under this Paragraph 3.

4. FUTURE ASSISTANCE: You agree that you will provide reasonable assistance and cooperation to Wal-Mart in connection with any litigation or similar proceedings that may exist or may arise regarding events as to which you have knowledge by virtue of your former employment with Wal-

4

Mart. Wal-Mart will compensate you for reasonable and requested travel, materials, and other expenses incidental to any such support provided to Wal-Mart.

**5. PRESERVATION OF CONFIDENTIAL INFORMATION.** You agree that you will not at any time, directly or indirectly, use or disclose any Confidential Information obtained during the course of your employment with Wal-Mart except as may be authorized by Wal-Mart. "Confidential Information" shall include any non-public information pertaining to Wal-Mart's business, and shall include information obtained by you during the course of, or as a result of, your employment with Wal-Mart, including, without limitation, information regarding Wal-Mart's processes, suppliers (including the terms, conditions, or other business arrangements with such suppliers), advertising and marketing plans and strategies, profit margins, seasonal plans, goals, objectives and projections, compilations, analyses, and projections regarding Wal-Mart's business, trade secrets, salary, staffing, compensation, and other employment data, and any "know-how" techniques, practice or any technical information not of a published nature regarding Wal-Mart's business.

**6. REMEDIES FOR BREACH.** The parties shall each be entitled to pursue all legal and equitable rights and remedies to secure performance of their respective obligations and duties under this Agreement, and enforcement of one or more of these rights and remedies will not preclude the parties from pursuing any other rights and remedies. You acknowledge that a breach of the provisions of Paragraph 3 or Paragraph 4, above, could result in substantial and irreparable damage to Wal-Mart's business, and that the restrictions contained in Paragraphs 3 and 4 are a reasonable attempt by Wal-Mart to protect its rights and to safeguard its Confidential Information. You expressly agree that upon a breach or a threatened breach by you of the provisions of Paragraph 3 or Paragraph 4, Wal-Mart will be entitled to injunctive relief to restrain such violation, and you hereby expressly consent to the entry of such temporary, preliminary, and/or permanent injunctive relief, as may be necessary to enjoin the violation of Paragraph 3 or Paragraph 4. The parties further agree that any action relating to the

5

interpretation, validity, or enforcement of this Agreement shall be brought in the appropriate state or federal court encompassing Benton County, Arkansas, and the parties hereby expressly consent to the jurisdiction of such courts. You further agree that in any claim or action involving the execution, interpretation, validity, or enforcement of this Agreement, you will seek satisfaction exclusively from the assets of Wal-Mart, and will hold harmless all of Wal-Mart's individual directors, officers, employees, and representatives.

7. **SEVERABILITY.** In the event that a court of competent jurisdiction shall determine that any portion of this Agreement is invalid or otherwise unenforceable, the parties agree that the remaining portions of the Agreement shall remain in full force and effect. The parties also expressly agree that if any portion of the covenant not to compete set forth in Paragraph 3 shall be deemed unenforceable, then the Agreement shall automatically be deemed to have been amended to incorporate such terms as will render the covenant enforceable to the maximum extent permitted by law.

8. **NATURE OF THE RELATIONSHIP.** Nothing contained in this Agreement shall be deemed or construed to constitute a contract of employment for a definite term. The parties acknowledge that you are not employed by Wal-Mart for a definite term, and that either party may sever the employment relationship at any time and for any reason not otherwise prohibited by law.

9. **ENTIRE AGREEMENT.** This document contains the entire understanding and agreement between you and Wal-Mart regarding the subject matter of this Agreement. This Agreement supersedes and replaces any and all prior understandings or agreements between the parties regarding this subject, and no representations or statements by either party shall be deemed binding unless contained herein.

10. **MODIFICATION.** This Agreement may not be amended, modified, or altered except in a writing signed by both parties or their designated representatives.

11. **SUCCESSORS AND ASSIGNS.** This Agreement will inure to the benefit of, and will be binding upon, Wal-Mart, its successors and assigns, and on You and your heirs, successors, and assigns.

6

No rights or obligations under this Agreement may be assigned to any other person without the express written consent of all parties hereto.

12. **COUNTERPARTS.** This Agreement may be executed in counterparts, in which case each of the two counterparts will be deemed to be an original and the final counterpart will be deemed to have been executed in Bentonville, Arkansas.

13. **GOVERNING LAW.** This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware.

14. **STATEMENT OF UNDERSTANDING.** By signing below, you acknowledge (a) that you have received a copy of this Agreement, (b) that you have read the Agreement carefully before signing it, (c) that you have had ample opportunity to ask questions concerning the Agreement and have had the opportunity to discuss the Agreement with legal counsel of your own choosing, and (d) that you understand your rights and obligations under this Agreement, and enter into this Agreement voluntarily.

WAL-MART STORES, INC.

By: _____
Fredrick W. Ley
Senior Vice President, People

_____
Julie Roehm
Senior Vice President,
Marketing Communications

__10-_____
Date

__1/13/06__
Date

7