Case 2:07-cv-10168-LPZ-RSW   Document 19   Filed 05/17/2007   Page 1 of 1

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

JULIE ANN ROEHM,

    Plaintiff,

vs.    USDC Case No. 2:07-CV-10168

WAL-MART STORES, INC,    HON. LAWRENCE ZATKOFF
a Delaware corporation,

    Defendant.

---

THE LAW FIRM OF JOHN F. SCHAEFER
JOHN F. SCHAEFER, (P-19948)
ANDREW RIFKIN, (P-46147)
Attorneys for Plaintiff
380 North Old Woodward, Suite 320
Birmingham, Michigan 48009
(248) 642-6665

SOMMERS SCHWARTZ, P.C.
SAM G. MORGAN, (P-36694)
KEVIN J. STOOPS, (P-64371)
Co-Counsel for Plaintiff
2000 Town Center, Suite 900
Southfield, Michigan 48075
(248) 355-0300

DYKEMA GOSSETT, PLLC
DEBRA M. McCULLOCH, (P-31995)
Attorney for Defendant
39577 Woodward Avenue, Suite 300
Bloomfield Hills, Michigan 48304
(248) 203-0756

GIBSON DUNN & CRUTCHER, LLP
EUGENE SCALIA
KARL G. NELSON
DAVID J. DEBOLD, (P-39278)
Co-Counsel for Defendant
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
(202) 955-8500

---

## FIRST AMENDED COMPLAINT AND DEMAND FOR TRIAL BY JURY

LAW OFFICES SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C. • 2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

Plaintiff, **JULIE ANN ROEHM**, by and through her attorneys, **SOMMERS SCHWARTZ, P.C.** and **THE LAW FIRM OF JOHN F. SCHAEFER,** and as allowed by this Court's Order entered on May 16, 2007, states her First Amended Complaint against the Defendant as follows:

## PARTIES AND JURISDICTION

1. Plaintiff, JULIE ANN ROEHM, is an individual that resides in and is a citizen of the State of Arkansas.

2. Defendant, WAL-MART STORES, INC., is a Delaware corporation that maintains its principal place of business in the City of Bentonville, State of Arkansas.

3. Prior to January 13, 2006, Plaintiff was a citizen of the State of Michigan, employed by the Daimler Chrysler Corporation, and residing (with her husband and two (2) children) in Oakland County, in the City of Rochester Hills, Michigan.

4. On January 13, 2006, Plaintiff accepted the express written terms and conditions of employment offered by Defendant in a letter agreement dated January 11, 2006, and also entered into a Post Termination Agreement and Covenant Not to Compete with Defendant, copies of which are attached hereto as Exhibit A.

5. Plaintiff made and executed both the letter agreement and the Post Termination Agreement and Covenant Not to Compete in the City of Rochester Hills, State of Michigan.

6. According to the express terms of the letter agreement, Plaintiff and Defendant agreed that Plaintiff would be employed by Defendant in the position of Senior Vice President, Marketing Communications, starting on a mutually agreed upon date.

7. An express condition of employment for the position of Senior Vice President, Marketing Communications, as set forth in the letter agreement, was that Plaintiff was required to "relocate" to Northwest Arkansas.

8. In connection with Plaintiff's relocation to Northwest Arkansas, Defendant agreed to:

   a. Provide Plaintiff and her family with a "5-day 'pre-move' visit" to search for a new community in which to make their home.

   b. Provide Plaintiff with a "relocation and temporary living allowance" to assist with costs associated with Plaintiff's "relocation to Bentonville".

   c. Cover the fees associated with the sale of Plaintiff's home in Rochester Hills, Michigan, and the purchase of her "new home in Northwest Arkansas".

   d. Provide Plaintiff with a "double-rent/mortgage" benefit (Defendant would pay one of the Plaintiff's mortgage payments for up to 6 months), which was available to "[r]elocating associates [ ] whom have not sold their home-of-origin after six months."

9. On or about January 28, 2006, Plaintiff put her house in Rochester Hills, Michigan, up for sale.

10. Plaintiff relocated to Northwest Arkansas and commenced employment with Defendant on or about February 6, 2006.

11. Plaintiff's husband and children continued to reside in their Rochester Hills, Michigan, house until the school year ended, in early June 2006.

12. On or about June 16, 2006, Plaintiff and her husband purchased their new house in Bentonville, Arkansas.

13. On or about June 17 and 18, 2006, Plaintiff's husband and children moved out of the house in Rochester Hills, Michigan, and into their new house in Bentonville, Arkansas.

14. At all times since June 16, 2006, Plaintiff and her family have made their home and are domiciled in their new house in Bentonville, Arkansas.

15. Individually, Plaintiff has been domiciled in the State of Arkansas since on or about February 6, 2006.

16. Plaintiff still owns her house in Rochester Hills, Michigan, as it has not sold, but it remains listed on the market for sale.

17. At all relevant times, Defendant has, directly and/or indirectly through its subsidiaries, joint ventures, partnerships and affiliates, maintained retail stores and offices, and conducts regular and systematic ongoing business in Oakland County, State of Michigan.

18. The amount in controversy in this cause of action, exclusive of interest and costs, is in excess of Twenty-Five Thousand ($25,000.00) Dollars.

19. By its prior actions and pleadings filed in this cause of action, Defendant has waived the choice of forum provision that appears in ¶ 6 of the Post Termination Agreement and Covenant Not to Compete (Exhibit A).

20. The letter agreement (Exhibit A) does not contain a choice of forum provision.

21. Venue is both proper and convenient in Oakland County, Michigan.

22. By its prior actions and pleadings filed in this cause of action, Defendant has conceded that Venue is both proper and convenient in Oakland County, Michigan.

### **COMMON FACTUAL ALLEGATIONS**

23. Among the express terms and conditions set forth in the letter agreement (Exhibit A), Defendant offered, represented and committed to pay to Plaintiff (1) a signing bonus of $250,000; (2) an annual base salary of $325,000; (3) Annual Incentive Payments of up to 125% of Plaintiff's annual salary beginning with the fiscal year ending January 31, 2007, in accordance with Defendant's so-called "Management Incentive Plan," and provided that Plaintiff was employed through January 31st of the fiscal year for which the incentive payment was to be paid; (4) Equity Compensation in the form of an initial restricted stock award with a value of approximately $300,000, to be vested over a period of three to five years after Plaintiff commenced employment, conditioned on her continued employment with Defendant, and which also included the right to be paid cash dividends during and after the vesting period; (5) Equity Compensation in the form of an "equity award", consisting of stock options which

LAW OFFICES
SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

had a value of $500,000, and which would vest in equal 20% increments during each of the first five years after Plaintiff commenced employment, conditioned on her continued employment with Defendant; (6) Equity Compensation in the form of an "annual equity award," to be awarded "in the first quarter of the calendar year," as stock options or some other form of equity with a value of $500,000; (7) four weeks of vacation annually; and, (8) other "benefits" as set forth in the letter agreement.

24.     Among the express provisions of the Post-Termination Agreement and Covenant Not to Compete (Exhibit A) was Defendant's agreement to make so-called "Transition Payments" to Plaintiff as follows: "If [Defendant] initiates the termination of your employment, [Defendant] will, for a period of one (1) year from the effective date of such termination ... continue to pay [Plaintiff's] base salary at the rate in effect on the date of termination ..."

25.     The only exceptions to Defendant's agreed upon obligation to make Transition Payments were in the event:  (1) Plaintiff's employment was "terminated as the result of a violation of [Defendant's] policy; (2) Plaintiff was demoted in a manner that does not constitute a constructive discharge, but in such a manner that she was no longer a so-called "key executive" or was no longer bound by the Covenant Not to Compete, (3) Plaintiff's voluntary resignation; or (4) Plaintiff's death.

26.     Based upon and in reliance on the representations and covenants made and offered by Defendant in the letter agreement and Post-Termination Agreement and Covenant Not to Compete, Plaintiff accepted and executed both agreements, resigned from her employment with Daimler Chrysler Corporation, put her Rochester Hills house up for sale, relocated to Bentonville, Arkansas, commenced employment with Defendant on February 6, 2006, purchased a new house in Bentonville, Arkansas, and relocated her husband and children to make their home in Bentonville, Arkansas.

27. Plaintiff's employment with Defendant and relocation to Bentonville, Arkansas would prove to be temporary, however.

28. On December 4, 2006, Defendant's Chief Marketing Officer ("CMO") informed Plaintiff that Defendant was terminating her employment, ostensibly because she "hasn't been fulfilling the expectations of an officer of the company."

29. Notably, Defendant's CMO did not state or assert that Plaintiff was being terminated because she violated one of Defendant's policies.

30. Further, in response to Plaintiff's inquiry about what she had done, or not done, to cause Defendant to terminate her employment, Defendant's CMO provided no specific examples of any conduct by Plaintiff that did not fulfill the expectations of an officer of the company.

31. In fact, Plaintiff did not engage in any conduct (by action or inaction) that failed to fulfill the expectations of an officer of Defendant.

32. Defendant informed Plaintiff that she would receive no compensation from Defendant beyond December 4, 2006.

33. Defendant stopped paying Plaintiff's salary, terminated Plaintiff's participation in its Management Incentive Plan, terminated Plaintiff's restricted stock options and other equity compensation, terminated Plaintiff's other "benefits", and has refused to make Transition Payments to Plaintiff.

34. Defendant, further, continues to hold in its offices personal files and property belonging to Plaintiff, despite Plaintiff's requests to Defendant for return of that property.

35. Since terminating Plaintiff's employment, Defendant has made and published false and malicious statements about Plaintiff to the media and others.

36. Reinstatement is impracticable.

6

## COUNT I—BREACH OF CONTRACT

37. Plaintiff realleges and reincorporates each and every paragraph of this First Amended Complaint as though more fully set forth herein.

38. The Post-Termination Agreement and Covenant Not to Compete (Exhibit A) is a valid and enforceable contract, which by its own terms must be construed in accordance with Delaware law.

39. Defendant drafted the Post-Termination Agreement and Covenant Not to Compete, thus any and all ambiguities must be resolved in Plaintiff's favor.

40. Defendant initiated the termination of Plaintiff's employment.

41. The reason for termination as stated by Defendant's CMO at the time Plaintiff was discharged, does not relieve Defendant from its contractual obligation to pay Plaintiff the Transition Payments and other benefits set forth in the Post-Termination Agreement and Covenant Not to Compete.

42. The explanation and/or reasons for termination as set forth in Defendant's Counterclaim are a pretext, conjured up by Defendant in an effort to evade its contractual obligation to pay Plaintiff the Transition Payments and other benefits set forth in the Post-Termination Agreement and Covenant Not to Compete.

43. Defendant's failure and refusal to pay Plaintiff the Transition Payments and other benefits set forth in the Post-Termination Agreement and Covenant Not to Compete constitutes a breach of that contract.

44. As a direct and proximate result of Defendant's aforementioned breach of contract, Plaintiff has sustained damages, which include, but are not limited to, salary and benefits continuation set forth in the Post-Termination Agreement and Covenant Not to Compete, increased costs, and attorney fees, as well as other consequential losses.

LAW OFFICES
SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C. • (248) 355-0300
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075

45. Plaintiff has performed all conditions precedent under the Post-Termination Agreement and Covenant Not to Compete.

WHEREFORE, Plaintiff prays this Honorable Court to enter a judgment in her favor and against the Defendant, for an amount consistent with the evidence, including exemplary and punitive damages, appropriate equitable and injunctive relief, assessing costs, interest, and an award of reasonable attorney fees.

## COUNT II—BREACH OF THE DUTIES OF GOOD FAITH AND FAIR DEALING

46. Plaintiff realleges and reincorporates each and every paragraph of this First Amended Complaint as though more fully set forth herein.

47. Expressed and/or implied in the letter agreement and Post-Termination Agreement and Covenant Not to Compete between Plaintiff and Defendant was/is the duty perform on and apply the terms and conditions set forth in those agreements fairly and in good faith.

48. The aforementioned duty of good faith and fair dealing includes, but is not limited to, refraining from terminating Plaintiff for the purpose of evading the incentive compensation, equity compensation, Transition Payments and other benefits set forth and agreed upon in those agreements.

49. Defendant realized substantial economic benefit as a direct result of Plaintiff's job performance during the time frame of February 6, 2006 through December 4, 2006.

50. However, in the weeks before December 4, 2006, made a decision to halt the marketing strategy that it started when it recruited and hired Plaintiff, for reasons unrelated to Plaintiff's job performance.

51. Defendant, then, conjured up a pretext to terminate Plaintiff's employment with Defendant, and terminated Plaintiff in advance of the end of the calendar and fiscal year, in an effort to evade its contractual obligations to pay Plaintiff Incentive Compensation, Equity Compensation,

8

Transition Payments and other benefits set forth in the letter agreement and Post-Termination Agreement and Covenant Not to Compete.

52. Defendant actions in terminating Plaintiff's employment, as described above, breached its expressed and/or implied duty of good faith and fair dealing owed to Plaintiff under the letter agreement and the Post-Termination Agreement and Covenant Not to Compete.

53. As a direct and proximate result of Defendant's breach of its expressed and/or implied duty of good faith and fair dealing, Plaintiff has suffered damages, including but not limited to a loss of employment and employment advancement opportunities, loss of past and future employment compensation, Incentive Compensation, Equity Compensation, and other employment benefits, injury to her reputation, continuing interference by Defendant with her post-termination employment opportunities, consequential economic damages, humiliation, mental anguish and emotional distress.

54. Plaintiff has performed all conditions precedent under the letter agreement and Post-Termination Agreement and Covenant Not to Compete.

WHEREFORE, Plaintiff prays this Honorable Court to enter a judgment in her favor and against the Defendant, for an amount consistent with the evidence, including exemplary and punitive damages, appropriate equitable and injunctive relief, assessing costs, interest, an award of reasonable attorney fees.

## COUNT III—FRAUD AND MISREPRESENTATION

55. Plaintiff realleges and reincorporates each and every paragraph of this First Amended Complaint as though more fully set forth herein.

56. Defendant made material representations of fact to Plaintiff that Defendant would abide in good faith to the terms of the letter agreement and Post-Termination Agreement and Covenant Not to Compete if Plaintiff entered into those agreements and relocated her family to Arkansas. Defendant

LAW OFFICES
SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300

further represented that Defendant, pursuant to those agreements, would pay all sums due and owing to Plaintiff according to the terms of those agreements.

57. Defendant's material representations of fact to Plaintiff were false.

58. Defendant knew that its representations were false when they were made, or Defendant made the misrepresentations recklessly, without knowledge of their truth, as a positive assertion.

59. Defendant made these assertions with the intention that the assertions be acted upon by Plaintiff in entering into the agreements.

60. Plaintiff acted in reliance upon the misrepresentations of material fact made by Defendant by resigning her employment with Daimler Chrysler Corporation, and doing so just three months short of completing her fifth year of employment with Daimler Chrysler, where had she not resigned, she would have completed the 5-year vesting requirement under Daimler Chrysler's various retirement benefit plans; by putting her Michigan house up for sale; purchasing her Arkansas house; by committing to a second mortgage and a bridge loan in order to finance the purchase of the Arkansas house; by uprooting and moving her family and all of their furniture and personal belongings out the Michigan house, and relocating and moving herself, her family, their furniture and personal belongings to their new Arkansas house; and by enrolling her children in school in Arkansas, where they all remain today.

61. As a direct and proximate result of Defendant's misrepresentations of material facts, Plaintiff has suffered damages, including, but not limited to, a loss of employment and employment advancement opportunities, loss of past and future employment compensation, Incentive Compensation, Equity Compensation, and other employment benefits; injury to her reputation; continuing interference by Defendant with her post-termination employment opportunities, consequential economic damages, attorney fees and costs; and, humiliation, mental anguish and emotional distress.

WHEREFORE, Plaintiff prays this Honorable Court to enter a judgment in her favor and against the Defendant, for an amount consistent with the evidence, including exemplary and punitive damages, appropriate equitable and injunctive relief, assessing costs, interest, and an award of reasonable attorney fees.

## COUNT IV—CLAIM AND DELIVERY

62. Plaintiff realleges and reincorporates each and every paragraph of this First Amended Complaint as though more fully set forth herein.

63. Defendant remains in possession of belongings created and owned entirely by Plaintiff, with no connection whatsoever to Defendant, including but not limited to copies of the following computer Outlook folders/files: The Exchange, all personal folders, and Contacts.

64. Defendant has refused to return those belongings to Plaintiff.

WHEREFORE, Plaintiff prays this Honorable Court to enter a judgment in her favor and against the Defendant, for an amount consistent with the evidence, including exemplary and punitive damages, appropriate equitable and injunctive relief, assessing costs, interest, and an award of reasonable attorney fees.

## COUNT IV— GENDER DISCRIMINATION

65. Plaintiff realleges and reincorporates each and every paragraph of this First Amended Complaint as though more fully set forth herein.

66. At all times relevant to this cause of action, Plaintiff was a individual employed by Defendant in the State of Arkansas, and thereby entitled to the protections from discrimination set forth in the Arkansas Civil Rights Act (the "ACRA").

67. The choice of law provision contained in ¶ 13 of the Post-Termination Agreement and Covenant Not to Compete applies only to the enforcement and construction of the terms and conditions

of that Agreement, and does not cover or apply to the other terms, conditions, and legal or statutory rights that Plaintiff enjoyed as one of Defendant's employees.

68. At all relevant times, Defendant was an employer subject to the ACRA's prohibitions against employment discrimination, and subject to each of the remedies and liability for damages imposed by and set forth in the ACRA.

69. At all relevant times, Defendant had a duty under the ACRA to refrain from discriminating against Plaintiff relative to the terms and conditions of her employment because of her gender.

70. Defendant had a duty under the ACRA to refrain from applying policies, work rules and standards of employee conduct to Plaintiff in a manner that was different, harsher, more difficult, and more punitive, than it did toward its similarly situated male employees.

71. Defendant had a duty under the ACRA to refrain from discharging Plaintiff from employment with Defendant in a manner or way that discriminated against Plaintiff on the basis of her gender.

72. Defendant had a duty under the ACRA to refrain from conduct that increased the adverse economic consequences of discharging Plaintiff from employment with Defendant in a manner that discriminated against Plaintiff on the basis of her gender.

73. Defendant and its management employees and agents, violated the anti-gender discrimination duties imposed by ACRA when it/they decided to terminate, and carried out the termination of, Plaintiff's employment with Defendant.

74. As a direct and proximate of Defendant's gender discrimination toward Plaintiff, as described above, Plaintiff has suffered damages, including but not limited to a loss of employment and employment advancement opportunities, loss of past and future employment compensation, Incentive

Compensation, Equity Compensation, and other employment benefits, injury; to her reputation; continuing interference by Defendant with her post-termination employment opportunities; and humiliation, mental anguish and emotional distress.

WHEREFORE, Plaintiff prays that this Honorable Court enter a Judgment in her favor, and against Defendant, for: (1) money damages in an amount consistent with the evidence to compensate Plaintiff for her economic and non-economic damages, (2) punitive damages, (3) appropriate injunctive/equitable relief, and (4) an award of costs of this litigation, including reasonable attorney fees, costs and interest.

### DEMAND FOR TRIAL BY JURY

Plaintiff, **JULIE ANN ROEHM**, by and through his attorneys, **SOMMERS SCHWARTZ, P.C.** and **THE LAW FIRM OF JOHN F. SCHAEFER,** and hereby demands for trial by jury in this cause.

                                                  s:\Sam G. Morgan, (P-36694)
SOMMERS SCHWARTZ, P.C.
Attorneys for Plaintiff
2000 Town Center, Suite 900
Southfield, Michigan 48075-1100
(248) 355-0300
smorgan@sommerspc.com

s:\B. Andrew Rifkin, (P-46147)
THE LAW FIRM OF JOHN F. SCHAEFER
Attorneys for Plaintiff
380 North Old Woodward, Suite 320
Birmingham, Michigan 48009
(248) 642-6665
bar@lfjfs.com

Dated: May 17, 2007

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2007, I electronically filed the foregoing papers with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

John F. Schaefer (P-19948) at bar@lfjfs.com
B. Andrew Rifkin (P-46147) at bar@lfjfs.com
Eugene Scalia at escalia@gibsondunn.com
Debra M. McCulloch (P-31995) at dmcculloch@dykema.com

and I hereby certify that I have mailed by United States Postal Service the papers to the following non-ECF participants: N/A

s/Sam G. Morgan, (P-36694)
Sommers Schwartz, P.C.
2000 Town Center, Suite 900
Southfield, Michigan 48075
(248) 746-4040
smorgan@sommerspc.com

LAW OFFICES
SOMMERS, SCHWARTZ, SILVER & SCHWARTZ, P.C.
2000 TOWN CENTER • SUITE 900 • SOUTHFIELD, MICHIGAN 48075 • (248) 355-0300