Dockets.Justia.com

# EXHIBIT "A"

**WAL★MART®**

**People Division**

*Corporate Offices*
702 S.W. 8TH Street
Bentonville, AR 72716-0200
Fred.Ley@wal-mart.com

EXECUTIVE RECRUITING

*Frednck W Ley*
*SVP Poople*
*(479) 277-1798*

January 10, 2006

Julie Roehm
1381 Whitehouse Court
Rochester Hills, MI 48306

Dear Julie,

We are pleased to offer you the position of **Senior Vice President, Marketing Communications** with Wal-Mart Stores, Inc. This position will report to John Fleming, Executive Vice President, Marketing and Consumer Communications. We anticipate having you start on a mutually agreed upon date. The following is a confirmation of our offer:

1. **Direct Compensation**

    a) **Base Salary - $325,000.00.** Salaries are generally reviewed in March/April of each year. You will also receive a one-time signing bonus of **$250,000.00**. The signing bonus is taxable income and will be reduced for applicable withholding taxes.

    b) **Annual Incentive Payments.** Beginning with the fiscal year ending January 31, 2007, you will be eligible to participate in the **Wal-Mart Stores, Inc. Management Incentive Plan** (the "MIP"). The MIP currently allows you to earn up to a maximum of **125%** percent of your annual salary in an incentive payment based on the Company reaching certain pre-established performance measures, which are currently based on pre-tax profit and diversity goals. Your date of hire determines MIP eligibility. Generally, salaried Associates hired prior to November 1st are eligible for a prorated share of the incentive payment for that MIP performance period. Associates must remain employed through January 31st of the fiscal year to receive the incentive payment.

    c) **Equity Compensation.**

        (1) Upon approval of the Stock Option Committee of the Board of Directors, you will receive an initial award of **restricted stock** with a value of approximately **$300,000.00**. The vesting of this award is contingent upon your continued employment with the Company. Your restricted stock will vest as follows: one-half

of this award will vest three years after the grant date and one-half of this award will vest five years after the grant date. You will be eligible to receive dividends on unvested restricted stock, which are paid in cash.

(2) As a Senior Vice President, and upon approval of the Stock Option Committee of the Board of Directors, you will receive an equity award with a value of **$500,000.00**. The vesting of this award is contingent upon your continued employment with the Company. Your stock options will vest equally over five years after the date of grant (i.e., 20 percent of the stock options will vest each year).

(3) Annual equity awards, which normally occur in the first quarter of the calendar year, typically are issued in the form of stock options, performance shares, or a combination of both, based on your performance and your officer position. You should note that stock options are typically issued at approximately a 3:1 ratio versus other forms of equity (e.g., performance shares). For example, based on your position, if the annual equity award was granted only in stock options, you would be eligible for an award of option shares based on a value of $500,000. If the annual equity award is in another form of equity or combined with stock options, your annual equity award would be based on a value of less than $500,000.

d) You will be granted **4 weeks of annual vacation**, upon employment. Please be advised that vacation becomes available each year on the anniversary of your hire date. Note: one week of vacation equals six days, and vacation time does not accrue if not used in the same year.

## II. Benefits.

Summarized below are some of the benefits for which you are eligible as a Wal-Mart Associate. All benefits are subject to the terms of the applicable plan documents and may be amended from time to time.

a) As an officer, you have an opportunity to defer base salary and incentive payments through the **Wal-Mart Stores, Inc. Officer Deferred Compensation Plan**. This plan offers an attractive annual interest rate and provides for additional bonuses to be paid on a portion of the deferred amounts after ten (10) years participation (twenty (20) percent) and fifteen (15) years participation (ten (10) percent).

b) You will be eligible to participate in the **Wal-Mart Stores, Inc. 2004 Associate Stock Ownership Plan**. The maximum individual payroll deduction is $25,000 per year. The Company will contribute automatically to your Associate Stock Ownership account fifteen (15) percent for every dollar you purchase up to your first $1,800 in payroll deductions each plan year.

c) You will be eligible for **Profit Sharing** effective on your thirteenth (13th) month of employment. This plan is totally Company funded and is primarily invested in

Case 2:07-cv-10168-LPZ-RSW    Document 19-3    Filed 05/17/2007    Page 4 of

Company stock. The Company's contribution is a percentage of your eligible wages and is based each year on the Company's profitability. You will be fully vested after seven (7) years.

d) You will also be eligible for our **401(k) Plan** effective on your thirteenth (13th) month of employment. With the 401(k) Plan, you can contribute your money through payroll deductions into a retirement/savings account and direct how it is invested. The Company contributes to the plan, annually, regardless of whether or not you choose to invest. Enrollment information will be provided during the month that you become eligible. You may roll over funds from another qualified plan anytime following your employment confirmation and completion of the necessary paperwork which can be obtained by calling 1-888-WMT-401K (1-888-968-4015).

e) Because of your compensation level, you will be permitted to participate in the **Wal-Mart Stores, Inc. Supplemental Executive Retirement Plan (the "SERP")**, beginning in your thirteenth (13th) month after hire. With the SERP, amounts that ordinarily would be contributed by the Company under the Profit Sharing and 401(k) Plan, but for limits under IRS regulations or your deferral under the Deferred Compensation Plan, are credited to the participant's account in the SERP.

f) You will be immediately eligible for medical coverage per our plan document. The medical plans offered to you may contain limitation during the first year of coverage. For example, in our **Associates' Health and Welfare Plan**, there is a limit of $25,000 for each covered participant for the first year of coverage. HMOs (where available) may not have first year limitations. The Dental Plan at Wal-Mart does have a one-year waiting period for orthodontia and major care services.

### III. Relocation

a) Wal-Mart will assist you in relocating to Northwest Arkansas via a professional moving service. Wal-Mart will provide a full-service executive pack and move coordinated via Wal-Mart Transportation (Note: Where qualified moving expenses are payable to a third-party Moving Service directly and not to the associate, related costs are not to be reported on the associates W-2 and are not compensation to the associate).

b) Wal-Mart will provide you a **5-day "pre-move"** visit for you and your family. Expenses relative to airfare, lodging, and car rental will be paid by Wal-Mart. A Real Estate agent will be provided on-site to facilitate your further research of our communities. This benefit is contingent upon your acceptance of this offer and will be made available to you immediately, thereafter.

c) Wal-Mart will provide you a **relocation and temporary living allowance** in an after-tax amount of **$ 75,000.00** to assist with expenditures incurred as a result of your relocation to Bentonville. Your lump-sum amount is inclusive of monies allocated for:

en route expenditures, temporary living expenditures, and "incidentals" expenditures. These allowances will be reflected as taxable income on your year-end Wages and Earnings Statement (W-2). In addition Wal-Mart will cover real estate fees associated with the sale of your current home and closing costs associated with the purchase of a home in Northwest Arkansas. The Wal-Mart Relocation Team will facilitate the marketing of your current home. Please do not sign a realtor contract until you have been contacted by our relocation team.

Wal-Mart has made monetary provisions, within your relocation and temporary living allowance, for 6 months of temporary living. Additionally, Wal-Mart will provide a "double-rent/mortgage" benefit to offset financial implications related to not more than six (6) mortgage payments incurred as a result of relocation. Relocating associates, whom have not sold their home-of-origin after six months, may enact the double-rent/mortgage benefit and defer payments of the lesser mortgage/rent to Wal-Mart Stores, Inc. for not more than six (6) months beyond said temporary living. This benefit may be extended based on discussion with your direct supervisor provided that you've engaged Wal-Mart's Relocation team for the marketing of your home.

In the event your commitment to Wal-Mart changes for any reason and you voluntarily leave the Company within the first year (12 months), you will be responsible for reimbursement of all relocation expenses, including the relocation allowance. There will also be a charge to cover costs associated with the use of an outside moving service.

IV. **Orientation**

As per federal law, in orientation you will be required to present the proper documentation to establish identity and employment eligibility. If you are unable to present the appropriate documents within three days of employment, we will be required to terminate your employment. Because this is federal law, there will be no exceptions. For the purpose of providing you an associate name badge, our Corporate Security department has asked that you come prepared with names, addresses, and phones numbers for two emergency contacts. Corporate Security will also need the vehicle information for the automobile you will generally drive to work including make, model, and license plate number.

This offer of employment is contingent upon you passing a drug screening test, education verification, and criminal background check. You must also complete a PDI assessment.

This letter is not a contract of employment. Your employment with Wal-Mart is on an at-will basis, meaning either you or Wal-Mart are free to terminate your employment relationship at any time for any reason.

Julie Roehm
January 10, 2006
Page 5

Julie, we look forward to you joining the Wal-Mart family. We ask that you acknowledge acceptance of this written offer by signing on the line below and returning this letter to my office by mailing to the address shown on the header portion of this offer letter.

Sincerely,

*[signature]*

Fredrick W. Ley

Offer Accepted By _*[signature]*_

Date 1/13/06

Case 2:07-cv-10168-LPZ-RSW    Document 19-3    Filed 05/17/2007    Page 6 of

# POST-TERMINATION AGREEMENT
# AND COVENANT NOT TO COMPETE

This Post-Termination Agreement and Covenant Not to Compete is entered into this ---(10th) day of January, 2006, by and between Wal-Mart Stores, Inc. and its affiliates ("Wal-Mart") and Julie Roehm ("You"). The parties agree as follows:

1. ACKNOWLEDGMENTS. As part of this Agreement, the parties specifically acknowledge that

(A) Wal-Mart is a major retail operation, with stores located throughout the United States and in certain foreign locations;

(B) You are being hired to serve as Senior Vice President, Marketing Communications a key executive position as defined by the Wal-Mart Board of Directors;

(C) As an essential part of its business, Wal-Mart has cultivated long term customer and vendor relationships and goodwill, which are difficult to develop and maintain, which require a significant investment of time, effort, and expense, and which can suffer significantly upon the departure of key executives;

(D) In the development of its business, Wal-Mart has also expended a significant amount of time, money, and effort in developing and maintaining confidential, proprietary, and trade secret information which, if disclosed or misused, could harm Wal-Mart's business and its competitive position in the retail marketplace;

(E) As Senior Vice President, Marketing Communications, you have access to confidential and proprietary trade secret information and other confidential information, including business plans and strategies, that would be of considerable value to Wal-Mart's competitors; and

(F) You acknowledge that Wal-Mart is entitled to take appropriate steps to ensure (i) that its Associates do not make use of confidential information gained during the course of their employment

with Wal-Mart and (ii) that no individual associate or competing entity gains an unfair, competitive advantage over Wal-Mart.

2. TRANSITION PAYMENTS. If Wal-Mart initiates the termination of your employment, Wal-Mart will, for a period of one (1) year from the effective date of such termination ("the Transition Period"), continue to pay your base salary at the rate in effect on the date of termination ("Transition Payments"), subject to such withholding as may be required by law and subject to the following conditions and offsets:

(A) Transition Payments will not be paid, if you are terminated as the result of a violation of Wal-Mart policy;

(B) If you are demoted or reassigned,(in a manner that does not constitute a constructive discharge) so that you cease to be a key executive as defined or determined by the Board of Directors, you will no longer be bound by the Covenant Not to Compete set forth in Paragraph 3, below, and will cease to be eligible for any of the benefits or payments (e.g., Transition Payments) provided by this Agreement;

(C) No Transition Payments will be paid if you voluntarily resign or retire from your employment with Wal-Mart;

(D) Given the availability of other programs designed to provide financial protection in such circumstances, Transition Payments will not be paid under this Agreement if you die or become disabled. If you die during the Transition Period, Transition Payments will cease at that time, and your heirs will not be entitled to the continuation of such payments. Transition Payments will not be affected by your disability during the Transition Period.

(E) Transition Payments will be offset by any amounts that you may earn during the Transition Period by virtue of self-employment or employment with, or involvement in, an entity other than a Competing Business, as defined in Paragraph 3(B) below. No Transition Payments will be made if you

2

are employed by a Competing Business as defined in Paragraph 3. Violation of your obligations under Paragraph 3 or Paragraph 4 below, or any other act that is materially harmful to Wal-Mart's business interests during the Transition Period, will result in the immediate termination of Transition Payments, in addition to any other remedies that may be available to Wal-Mart;

(F) Transition Payments will be paid on such regularly scheduled paydays as may be adopted by Wal-Mart for its other salaried employees.

(G) Receipt of Transition Payments will not entitle you to participate during the Transition Period in any of the other incentive, stock option, profit sharing, or other associate benefit plans or programs maintained by Wal-Mart, except, you will be entitled to participate in such plans or programs, to the extent that the terms of the plan or program provide for participation by former associates. Such participation, if any, shall be governed by the terms of the applicable plan or program.

3. **COVENANT NOT TO COMPETE.** In exchange for your promotion, for your inclusion in the Transition Payment program set forth in Paragraph 2, and for other good and valuable consideration, you agree, promise, and covenant as follows:

(A) For a period of one (1) years from the date on which your employment with Wal-Mart terminates, and regardless of the cause or reason for such termination, you will not directly or indirectly

(i) own, manage, operate, finance, join, control, advise, consult, render services to, have a current or future interest in, or participate in the ownership, management, operation, financing, or control of, or be employed by or connected in any manner with, any Competing Business as defined below in Paragraph 3(B); or

(ii) solicit for employment, hire or offer employment to, or otherwise aid or assist any person or entity other than Wal-Mart in soliciting for employment, hiring, or offering employment to, any employee of Wal-Mart, or any of its affiliates;

3

(B) For purposes of this Agreement, the term "Competing Business" shall include any general or specialty retail, wholesale, or merchandising business that sells goods or merchandise of the types sold by Wal-Mart at retail to consumers that is (i) located within the United States, or any other country in which Wal-Mart or its affiliates either operate a store or are known by you to have plans to open or acquire an operation within the next twenty four (24) months, and that (ii) has gross annual sales volume or revenues attributable to its retail operations in excess of U.S. $2 billion, or is reasonably expected to have gross sales volume or revenues of more than U.S. $2 billion in either the current fiscal year or the next following fiscal year. "Competing Business" as of the date of this Agreement shall specifically include, but is not limited to, such entities as Target/Dayton Hudson, Costco, K-Mart, Home Depot, Dollar General, Family Dollar, Kohls, Hudson Bay Company, Carrefour, HEB, Fred Meyers, Tesco, Makro, Ahold, J.C. Penney Co., Sears, Aldi, Lidl, J. Sainsbury, Morrison's, Ito-Yokado, Aeon-Jusco, Auchon, Toy's R Us, Loblaw Cos., Zeller's, Casino, Woolworth (Australia), Grupo Gigante, Controladora Comercial Mexicana, Soriana, Dollar Tree Stores, Inc. and Safeway Inc. and Plc.

(C) Ownership of an investment of less than the greater of $25,000 or 1% of any class of equity or debt security of a Competing Business will not be deemed ownership or participation in ownership of a Competing Business for purposes of this Agreement.

(D) The covenant not to compete contained in this Paragraph 3 shall bind you, and shall remain in full force and effect, regardless of whether you qualify, or continue to remain eligible, for the Transition Payments described in Paragraph 2 above. Termination of the Transition Payments pursuant to Paragraph 2 will not release you from your obligations under this Paragraph 3.

4. **FUTURE ASSISTANCE:** You agree that you will provide reasonable assistance and cooperation to Wal-Mart in connection with any litigation or similar proceedings that may exist or may arise regarding events as to which you have knowledge by virtue of your former employment with Wal-

4

Mart. Wal-Mart will compensate you for reasonable and requested travel, materials, and other expenses incidental to any such support provided to Wal-Mart.

5. **PRESERVATION OF CONFIDENTIAL INFORMATION.** You agree that you will not at any time, directly or indirectly, use or disclose any Confidential Information obtained during the course of your employment with Wal-Mart except as may be authorized by Wal-Mart. "Confidential Information" shall include any non-public information pertaining to Wal-Mart's business, and shall include information obtained by you during the course of, or as a result of, your employment with Wal-Mart, including, without limitation, information regarding Wal-Mart's processes, suppliers (including the terms, conditions, or other business arrangements with such suppliers), advertising and marketing plans and strategies, profit margins, seasonal plans, goals, objectives and projections, compilations, analyses, and projections regarding Wal-Mart's business, trade secrets, salary, staffing, compensation, and other employment data, and any "know-how" techniques, practice or any technical information not of a published nature regarding Wal-Mart's business.

6. **REMEDIES FOR BREACH.** The parties shall each be entitled to pursue all legal and equitable rights and remedies to secure performance of their respective obligations and duties under this Agreement, and enforcement of one or more of these rights and remedies will not preclude the parties from pursuing any other rights and remedies. You acknowledge that a breach of the provisions of Paragraph 3 or Paragraph 4, above, could result in substantial and irreparable damage to Wal-Mart's business, and that the restrictions contained in Paragraphs 3 and 4 are a reasonable attempt by Wal-Mart to protect its rights and to safeguard its Confidential Information. You expressly agree that upon a breach or a threatened breach by you of the provisions of Paragraph 3 or Paragraph 4, Wal-Mart will be entitled to injunctive relief to restrain such violation, and you hereby expressly consent to the entry of such temporary, preliminary, and/or permanent injunctive relief, as may be necessary to enjoin the violation of Paragraph 3 or Paragraph 4. The parties further agree that any action relating to the

5

interpretation, validity, or enforcement of this Agreement shall be brought in the appropriate state or federal court encompassing Benton County, Arkansas, and the parties hereby expressly consent to the jurisdiction of such courts. You further agree that in any claim or action involving the execution, interpretation, validity, or enforcement of this Agreement, you will seek satisfaction exclusively from the assets of Wal-Mart, and will hold harmless all of Wal-Mart's individual directors, officers, employees, and representatives.

7. **SEVERABILITY.** In the event that a court of competent jurisdiction shall determine that any portion of this Agreement is invalid or otherwise unenforceable, the parties agree that the remaining portions of the Agreement shall remain in full force and effect. The parties also expressly agree that if any portion of the covenant not to compete set forth in Paragraph 3 shall be deemed unenforceable, then the Agreement shall automatically be deemed to have been amended to incorporate such terms as will render the covenant enforceable to the maximum extent permitted by law.

8. **NATURE OF THE RELATIONSHIP.** Nothing contained in this Agreement shall be deemed or construed to constitute a contract of employment for a definite term. The parties acknowledge that you are not employed by Wal-Mart for a definite term, and that either party may sever the employment relationship at any time and for any reason not otherwise prohibited by law.

9. **ENTIRE AGREEMENT.** This document contains the entire understanding and agreement between you and Wal-Mart regarding the subject matter of this Agreement. This Agreement supersedes and replaces any and all prior understandings or agreements between the parties regarding this subject, and no representations or statements by either party shall be deemed binding unless contained herein.

10. **MODIFICATION.** This Agreement may not be amended, modified, or altered except in a writing signed by both parties or their designated representatives.

11. **SUCCESSORS AND ASSIGNS.** This Agreement will inure to the benefit of, and will be binding upon, Wal-Mart, its successors and assigns, and on You and your heirs, successors, and assigns.

6

No rights or obligations under this Agreement may be assigned to any other person without the express written consent of all parties hereto.

12. **COUNTERPARTS.** This Agreement may be executed in counterparts, in which case each of the two counterparts will be deemed to be an original and the final counterpart will be deemed to have been executed in Bentonville, Arkansas.

13. **GOVERNING LAW.** This Agreement shall be governed by, and construed in accordance with, the laws of the State of Delaware.

14. **STATEMENT OF UNDERSTANDING.** By signing below, you acknowledge (a) that you have received a copy of this Agreement, (b) that you have read the Agreement carefully before signing it, (c) that you have had ample opportunity to ask questions concerning the Agreement and have had the opportunity to discuss the Agreement with legal counsel of your own choosing, and (d) that you understand your rights and obligations under this Agreement, and enter into this Agreement voluntarily.

WAL-MART STORES, INC.

By: _____
Fredrick W. Ley
Senior Vice President, People

_____
Julie Roehm
Senior Vice President,
Marketing Communications

_____
Date

1/13/06
Date

7